## TARVER *v.* DEPPEN.

1. Upon the trial of a statutory complaint for land, the defendant relied upon a prescriptive title acquired by adverse possession by himself and those under whom he claimed, for seven years under color of title. The defendant introduced in evidence a deed wherein title to the land was conveyed to a copartnership, and a writing from one member thereof conveying or mortgaging the land to another to secure the payment of money borrowed by the grantor and to indemnify the grantee against loss by reason of his indorsement of certain notes, in which writing there was a provision that, if the grantor failed to pay such debts within a specified time, the grantee should have the power to sell such property at public outcry and from the proceeds of the sale to pay such debts. Two years after the execution of such writing the other member of the partnership conveyed the land to the same grantee, under whom the defendant claims title. *Held:* (*a*) Upon the trial of such case there was no error in admitting in evidence the last-named deed over the plaintiff's objection that the title to the land was in the partnership, and there was no deed from the partnership, or the other member thereof, to the member conveying such land to the grantee. The deed admitted was admissible as color of title. (*b*) If the grantee

in such deed was estopped from claiming such land against the member of the partnership executing the mortgage or security deed, such estoppel would not prevent such grantee from acquiring, under the other conveyance to him, as against the plaintiff (who did not hold under such partnership, or any member thereof), a good prescriptive title by seven years adverse possession.

2. The plaintiff having introduced a certified copy of a grant from the State to his predecessor in title under whom he claimed title, it was not error of which he could complain that the court permitted the defendant to introduce in evidence the original grant.

3. A ground in a motion for a new trial to the effect that the court erred in admitting in evidence, over the objection of counsel, a plat referred to in the testimony of a witness, can not be considered when a copy of the plat is not attached to the motion, or sufficiently described therein, especially where it does not elsewhere appear that such plat was introduced in evidence, and a copy thereof nowhere appears in the record.

4. An assignment of error complaining that the court failed to charge the jury upon all of the material issues of the case, without specifying upon what issues the court failed to charge the jury, is too general to permit of consideration.

5. An assignment of error that "the charge of the court was not applicable to the facts of the case and was to the jury misleading," is without merit where any part of the charge was applicable to the facts of the case and was not to the jury misleading.

6. There is no merit in the assignment of error that the court "failed to charge the jury upon the question of continuity of possession," as it appears from the charge that the court did instruct the jury on this point.

7. Where title to land is acquired by seven years adverse possession under color of title, such title can not be lost by the holder thereof by abandonment.

8. The evidence was sufficient to authorize the verdict, and the court did not abuse its discretion in refusing a new trial.

Submitted February 4,—Decided June 24, 1909.

Complaint for land. Before Judge Wright. Walker superior court. February 27, 1908.

*W. P. McClatchey* and *Minter Wimberly,* for plaintiff.

*Pritchard & Sizer* and *R. M. W. Glenn,* for defendant.

HOLDEN, J. 1-6. Tarver brought a statutory complaint against Deppen to recover a tract of land on the east side of Lookout Mountain. A verdict was rendered for the defendant. To the order of the court overruling his motion for a new trial the plaintiff excepted. Upon the trial of the case the plaintiff proved a perfect chain of title from the State. The defendant relied upon a prescriptive title alleged to have been acquired by those under

whom he claimed, by their holding the land adversely for seven years under color of title. The adverse possession under color of title by those under whom the defendant claimed was shown by the evidence to have existed for a period of seven years since the adoption of the Code of 1863. The rulings made in the first six headnotes require no elaboration.

7. The plaintiff contends that the court committed error in failing to charge the jury upon the question of abandonment by those under whom the defendant claims; and contends that the verdict is not supported by the evidence, for the reason that it appears from the evidence that if those under whom the defendant claims acquired a good title by adverse possession for seven years under color of title, the title thus acquired was lost by abandonment. The defendant held a deed to the property made in 1906, the year before the suit was filed, and there was evidence that those under whom he claims had been in adverse possession of the property under color of title for seven years after the adoption of the Code of 1863. There was some evidence that after 1863 the property during a period of years was not occupied and the houses thereon were allowed to go to decay by those under whom the defendant claims. To support his contention that if the defendant and those under whom he claims acquired a good title, it could be lost by abandonment, counsel relied mainly upon the decision of this court in the case of *Vickery* v. *Benson,* 26 *Ga.* 582, where it was held: "Although one holds another's land adversely for seven years under color of title and claim of right, yet if he then *abandons* the land he can not claim the benefit of the statute of limitations." It should be borne in mind that this decision was rendered, and the abandonment therein referred to occurred, prior to the adoption of the Code of 1863. It was held in the case of *Watkins* v. *Woolfolk,* 5 *Ga.* 261: (1) "Where a plaintiff in ejectment had been in possession of land for the period prescribed by the statute of limitations, holding adversely under color of title: *Held* that the action was maintainable against a defendant who had a regular chain of paper title, but who entered upon the premises after the expiration of seven years." (2) "The statute of limitations of this State not only bars the *right of action,* after the expiration of seven years, but bars the *right of entry* also." On page 268 it was said: "The only question pre-

sented by the record in this case is, whether seven years possession, under *color of title,* of lands, tenements, or hereditaments in this State, will entitle the party having such possession to maintain an action of ejectment against one who has entered upon the premises in dispute, after the expiration of said seven years, claiming to hold the same under a regular and perfect chain of title, from the State to himself.    The decision of this question must depend upon the construction to be given to the act of 1767. Prince's Dig. 573.    That act purports to be 'An act for limitation of actions, and for avoiding suits in law.'"    This act provided that all suits for the recovery of land should be brought within seven years after the right of action accrued, "and at no time after the said seven years."    It also provided that no person now having, or who may hereafter have, any "right or title of entry" shall make such entry unless made within seven years after the passage of the act, or after the right thereafter accrued.    It was not necessary, under the provisions of that act, for the right of action or entry of the true owner to be barred, after the expiration of seven years from the accrual thereof, that another should hold the land under color of title.    See *Pendergrast* v. *Gullatt,* 10 *Ga.* 218, where it was held:    "Possession of land under color of *paper* title is not indispensably necessary to protect the tenant, under the statute of limitations."    It was only necessary that such possession should be adverse.    There was no law in this State defining what constituted adverse possession until the adoption of the Code of 1863, nor until such code was adopted was there any statute in this State relating to possession under *color of title,* or in any other respect relating to *color of title.*    However, it was held in the case of *Moody* v. *Fleming,* 4 *Ga.* 116, hn. 5 (48 Am. D. 210):    "Possession under color and claim of title is *adverse* possession." Under the act of 1767, the right of action or the right of entry by the true owner of land must be exercised within seven years from the accrual thereof, or such right of action and entry would be barred.    In order for such right of action or entry by the true owner to be barred, the possession of another, making the exercise of such right necessary, must have been adverse.    If the possession of one not the true owner was adverse to the true owner, and the latter did not sue, or enter, within seven years from the beginning of such adverse possession, such right of action and right of entry

were barred under the act above referred to. If the right of action of the true owner was barred by reason of seven years adverse possession of another, and the true owner entered, the one who had been in adverse possession for seven years could recover from the true owner, as held in the case of *Watkins* v. *Woolfolk,* supra, wherein, on pp. 269-270, the court said: "The defendant's *right of entry* upon the land was as effectually barred as his right of action would have been, had he instituted it against the plaintiff to recover the possession of the premises. The statute not only bars the *right of action,* when there has been adverse possession under claim of right for seven years, but after that period it as imperatively bars the right of entry also, for the purpose of quieting men's estates, and for avoiding suits in law. The court below, in reversing its judgment, and granting a new trial, has offered the highest evidence of its desire to maintain the integrity of the statute, and to carry into effect the legislative will, and to make the statute what it was intended to be, a statute of repose." In determining the rights of the true owner and those of another who had been in adverse possession for seven years, it was held in the case of *Vickery* v. *Benson,* supra, that by reason of the statute of limitations under the act of 1767, if the latter "abandons the land, he can not claim the benefit of the statute of limitations." A similar ruling was made in the cases of *Cook* v. *Long,* 27 *Ga.* 280, and *Russell* v. *Slaton,* 25 *Ga.* 193. These rulings, however, referred to abandonment by one claiming the benefit of the statute of limitations under the act of 1767 as against the true owner, which statute did not, by its express terms, confer any title upon the one claiming such benefit. In the case of *Cook* v. *Long,* supra, on page 282, it was said: "It is true, the evidence showed that the disclaimer in this case of having title was made after the seven years had run. But what of that? We think it just as good to deprive the defendant of his statutory defense as if made within the seven years. And the defendant was not hurt by the assumption on the part of the court that the disclaimer may have been made within the seven years. On the contrary, the jury, examining the testimony and finding it was made afterwards, may have thought that it was not sufficient to oust the defendant of the benefit of his possession. And so may his honor have supposed. But we think differently. Suppose the maker of a note promise to pay after

the six years have run, will not this take it out of the statute? Surely." The act of 1767 did not expressly say that one who had adverse possession of land for seven years acquired a title. It simply provided that the true owner was barred from the right of action or entry after the expiration of seven years from the time of the accrual of such right of action or entry. This act further provided that any person who, at the time the act became effective, had been quietly in possession of lands under paper title, claiming the same as of his own right in fee simple, without interruption by suit or action at law lawfully commenced, for the space of 20 years, "shall have good right and title to the same, and shall have, hold, and enjoy the said lands, tenements, and hereditaments unto him, her, or them, his, her, or their heirs or assigns forever, in fee simple, against all and every other person and persons whatsoever." This provision in the act gave such persons so holding lands a fee-simple title thereto. In the case of *Jones* v. *Nunn*, 12 *Ga.* 469, 473, Justice Nisbet in delivering the opinion of the court, in writing upon the question of abandonment, said: "For caution's sake, I remark, parenthetically, that I do not speak of possession in this opinion, on either side, which by lapse of time has ripened into a statutory title." A person holding lands under the provisions of the act of 1767, lastly quoted above, by the express terms thereof acquired a fee-simple title thereto; whereas a person merely holding land against the true owner, by adverse possession for seven years, did not, by the express terms of the other provisions of the act, acquire any title, but the true owner was simply barred from suing for the same, or entering thereon. This act provided, in the one instance, where the true owner would be barred against an adverse claimant, but did not expressly put any title in such adverse claimant; and in the other instance, it provided for no bar by the statute of limitations on the part of the true owner against such adverse claimant, but expressly put the title to the property in the adverse claimant. The law, as codified in the Code of 1863, which was adopted by the legislature, and as carried into each of the codes since that time and now exists in the present code, is that the adverse possession of lands for 20 years, or adverse possession for seven years under color of title, gives to such holder a title to such lands,

and does not simply bar the right of recovery by the person holding a perfect chain of title thereto.

The provision of the act of 1767, that the right of action by the true owner of land for its recovery is barred if he does not bring such action within seven years from the time of its accrual, is not now of force in this State. There is in this State no statute of limitations prescribing the time within which the true owner of land may bring a suit to recover the same. *Ellis* v. *Smith,* 112 *Ga.* 480, 482 (37 S. E. 739). Since the Code of 1863, a person adversely holding lands for 7 years under color of title acquires a good title thereto. This was not true under the express provisions of the act of 1767. But in this State, since the Code of 1863, a person holding lands adversely for seven years under color of title acquires as good title thereto as he would acquire if he held a deed thereto from the true owner. Under the Spanish law, as it existed in the territory now a part of the United States, it appears that a person holding title to realty could lose it by abandonment. In 1 Cyc. 6, it is stated: "At common law a perfect legal title to a corporeal hereditament can not, it would seem, be lost by abandonment." No statute exists in this State by virtue of which it can be asserted that an abandonment of realty will result in the loss of title thereto. Whatever may be the rule with reference to one losing an easement by abandonment, or with reference to one having title to personalty losing it by abandonment, a person holding title to land can not lose it by abandonment. To permit, by mere abandonment, the transfer of title to land by the holder to another, would violate the statute of frauds. A title acquired by prescription can no more be lost by abandonment than a title acquired by deed or descent from the true owner. Abandonment by one in adverse possession under color of title before the expiration of seven years would break the continuity of the possession, and would prevent such possession from ripening into a title. But after such possession has ripened into title and the period ends, such abandonment can not destroy the title already acquired. It is not only a title which can be used by way of defense, but it is one which will sustain an action to recover the property from one who enters thereon. After title is once acquired, abandonment by the holder thereof does not destroy his title, unless such abandonment brings about an estoppel,

or unless the title to the abandoned property afterwards goes into another by reason of such other's adverse possession. 1 Cyc. 1139; 23 A. & E. Enc. Law, 940; 3 Wash. Real Prop. §1888; 2 Reeves, Real Prop. §1007. Also in this connection see *Holder* v. *Scarborough,* 119 *Ga.* 256 (46 S. E. 93); *Warren* v. *Ash,* 129 *Ga.* 329 (58 S. E. 858); *Peyton* v. *Stephens,* 130 *Ga.* 338 (60 S. E. 563, 124 Am. St. R. 170). We do not construe the decision in the case of *Williamson* v. *Mosley,* 110 *Ga.* 53 (35 S. E. 301), to mean that one who has acquired a good prescriptive title to land can lose it by mere abandonment. That decision simply means that if one claims title by adverse possession and afterwards abandons the land, the act of abandonment can be shown as an implied admission of a better outstanding title. When a party claims prescriptive title to land by adverse possession, his admissions during or after such possession, that the possession was not "accompanied by a claim of right," may be shown. Sage *v.* Rudnick, 67 Minn. 362 (69 N. W. 1096); 6 Enc. Ev. 682, and citations. It was proper for the court to charge upon abandonment as illustrative of the question as to whether or not the previous holding had been adverse, but, in the absence of a request to so charge, the mere failure to thus instruct the jury was not error requiring a new trial. In view of the rulings herein made, there is no merit in the contention that the verdict was not supported by the evidence because of abandonment of the land in dispute by the persons under whom the defendant claimed title.

8. The plaintiff contends that the possession of those under whom the defendant claims originated in fraud, and therefore could not, under the Civil Code, §3584, be the foundation of title by prescription. "Only moral fraud will prevent possession under color of title from ripening into a prescriptive title." *Street* v. *Collier,* 118 *Ga.* 470 (45 S. E. 294). The evidence was such as to authorize the jury to conclude that the possession of those under whom the defendant claimed did not originate in moral fraud, and that such possession was in every other respect adverse under color of title, thereby giving to the persons under whom the defendant claimed a good prescriptive title to the property for which suit was brought. The evidence was amply sufficient to support the verdict, and the court did not abuse its discretion in refusing a new trial.  *Judgment affirmed. All the Justices concur.*